IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENJAMIN MCBROOM, M35692, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-1309-DWD |
| | ) |
| ILLINOIS DEPT. OF CORR., | ) |
| LATOYA HUGHES, | ) |
| SALVADORE A. GODINEZ, | ) |
| JEREMIAH BROWN, | ) |
| MRS. BICE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Benjamin McBroom, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center (Lawrence), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## ANALYSIS

Plaintiff alleges that he has severe and permanent injuries to his right hand from a car crash in 2008. (Doc. 1 at 3). He claims that due to his injuries, repetitive movements of his right hand (such as writing) lead to serious pain and could lead to irreparable injury. (Doc. 1 at 4). To best mitigate issues, he believes it is necessary to limit writing, and to only write with ergonomic pens. (Doc. 1 at 4). He explains that during a prior incarceration, and while he was in the county jail prior to his current incarceration, he was afforded direct access to a typewriter or computer. (Doc. 1 at 4-7). Upon his recent admission to the IDOC, Plaintiff was not afforded any accommodations at Graham Correctional Center. (Doc. 1 at 6-7).

At Lawrence, Plaintiff submitted a request slip under the ADA/RA[1] to Defendant Bice, the ADA Coordinator. (Doc. 1 at 7). He alleges that he has yet to receive a response, and he has not had any direct contact with Bice. (Doc. 1 at 7). In addition to contacting Bice, Plaintiff has also asked his counselor (a non-party) for assistance drafting grievances, but on August 28, 2024, the counselor denied his request and simply suggested he draft shorter grievances or seek the help of a fellow inmate. (Doc. 1 at 8). Plaintiff alleges that this has hindered his ability to file numerous grievances. (*Id.*).

Nevertheless, on August 30, 2024, Plaintiff filed an emergency grievance about his desire for accommodations related to his injury. (Doc. 1 at 9). Plaintiff alleges that the only suitable accommodation would be an in-cell typewriter. (*Id.*). Defendant Brown

---

[1] The Court will refer to the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12203, as the "ADA" and the Rehabilitation Act, 29 U.S.C. § 794, as the "RA".

deemed the grievance an emergency on September 9, 2024, but the next day a non-party grievance officer recommended that the grievance be denied because it did not specify an incident date. (Doc. 1 at 10). Plaintiff characterizes this denial as procedurally improper, arguing that because his issue of non-accommodation is ongoing he believes the grievance rules do not require a particular incident date. He also argues that the grievance should have been processed by the ADA coordinator, instead of the grievance officer. (Doc. 1 at 11). He states that Defendant Brown signed off on the grievance on September 14, 2024, thus beginning the clock for him to appeal. (Doc. 1 at 11). Ultimately, the Administrative Review Board denied the grievance as untimely. Plaintiff argues that this was also improper. (Doc. 1 at 11). As a result of this series of events, he argues the grievance process was wholly unavailable.

Furthermore, he argues that the problems he faces are not grievable because he has learned there is a 2012 policy that bans inmates in maximum security prisons from personally possessing typewriters. (Doc. 1 at 7, 12). He alleges that the policy was formulated by former director, Defendant Godinez, and that it is still in force under acting director, Defendant Hughes. (Doc. 1 at 12). Plaintiff argues that the ban was instituted on false pretenses to protect prison security, but that there was never a sufficient justification to implement the policy, and there are safe typewriters available for the prison to purchase. (Doc. 1 at 12-13). He specifically claims that Godinez implemented the policy as a pretext based on security, when in fact the real purpose of the policy is to suppress inmate litigation by maximum security inmates who are the "most litigious and tenacious segment of the IDOC population, and those most likely to be on appeal of

serious criminal charges, as well as most likely to have suffered violations of their civil rights at the hands of IDOC officials." (Doc. 1 at 12-13).

Plaintiff argues that there is no legitimate security justification for banning his personal possession of a typewriter, particularly where a typewriter vendor offers "safe" typewriters that mitigate the risk of the typewriter parts being used as weapons. (Doc. 1 at 13). He also argues that Lawrence has a medium security wing where typewriters are allowed. This is significant he claims, because he has a non-violent history, and defendants could reclassify him to this area to accommodate his possession of a typewriter. (Doc. 1 at 13).

Without accommodations, Plaintiff has been reliant on typewriters in the prison law library. (Doc. 1 at 13-14). He claims that the prison law librarian has allowed him to use the typewriters on an informal basis, but that the permission could be revoked at any time. Limited access frustrates his ability to prepare legal documents. He also states that prison law library access is intermittent at best, and he can only use the typewriters for legal work but cannot use them for other forms of communication (such as letters or journaling). Without a typewriter, Plaintiff also has a limited ability to fill-out request slips, which are required to access programs and services. (Doc. 1 at 15). Overall, he argues that without accommodations, he is unable to access programs and services such as "legal and non-legal mail and correspondence, grievances, State and Federal courts, unstructured in-cell recreation such as creative writing and journaling, educational opportunities, law library research and consultations, and even PREA complaints[.]" (Doc. 1 at 15).

Plaintiff goes on to allege that on March 13, 2025, the typewriters became permanently unavailable, and the only option is now to use a computer for a fee. (Doc. 1 at 16). He alleges that even if he had more time to use the computer and it was free, it would not be an adequate accommodation, because it cannot be used for things like addressing envelopes or filling out request forms. (*Id.*). Aside from the computer situation, Plaintiff also alleges that he cannot properly write with flexible "seg pens" and he does not have appropriate ergonomic seating in his cell. (Doc. 1 at 16-17). If he were to be provided with a typewriter, he argues that he would need an unlimited supply of ink ribbons and correction ribbons. (Doc. 1 at 17-18).

Plaintiff contends that the lack of accommodations have already caused him serious physical pain on occasions when he has been forced to write by hand. (Doc. 1 at 16). He also alleges emotional and mental harm which he attributes at least in part to the lack of accommodation, alleging that he has been forced to start taking daily medications to address his PTSD, major depression, and anxiety disorder. (Doc. 1 at 19). He claims a prison doctor has instructed him to begin writing with his left hand, but he believes this will cause neurological and psychological harm. (*Id.*).

Plaintiff argues that without an accommodation, his ability to represent himself in multiple legal actions has been hindered. He explains that he was forced to accept the representation of the state appellate defender's office for his criminal appeal, which he claims has limited the issues presented on appeal. (Doc. 1 at 20-21). He also claims that he was hindered in state court child custody proceedings, and a malicious prosecution case in the Central District of Illinois. (Doc. 1 at 22-23). He argues that in a 2022 case in

the Central District of Illinois, he missed the opportunity to file a response to a pending motion for summary judgment. (Doc. 1 at 23). Finally, he argues that in a case filed last year before the undersigned, the case should have been resolved differently absent legal error. Specifically, he argues that if he had been able to file an amended complaint, the amended pleading would have precluded dismissal. (Doc. 1 at 24).

At the end of the pleading, Plaintiff enumerated a list of six claims against all defendants, and a seventh claim solely against Defendants Godinez and Hughes. (Doc. 1 at 25). He seeks declaratory, compensatory, and injunctive relief. (Doc. 1 at 26). In support of the complaint, Plaintiff submitted a one-page excerpt of his medical records, affidavits, grievance documentation, an excerpt from the offender orientation manual, correspondence with a typewriter vendor, and a memorandum concerning law library access. (Doc. 1 at 27-39).

The claims as presented by Plaintiff and adopted by this Court are:

Claim 1: **Violation of the ADA due to lack of accommodations;**

Claim 2: **Violation of the RA due to lack of accommodations;**

Claim 3: **Violation of the Eighth Amendment's cruel and unusual punishment clause by exhibiting deliberate indifference to Plaintiff's condition, causing him physical and mental/emotional suffering;**

Claim 4: **Violation of the First Amendment's Free Exercise clause due to Plaintiff's inability to write and draw;**

Claim 5: **Violation of the Fourteenth Amendment's guarantee to familial association;**

Claim 6: **Violation of the First Amendment by hindering Plaintiff's access to the Court's;**

      **Claim 7:**    First Amendment retaliation by Defendants Hughes and Godinez in response to and in anticipation of past, present, and future inmate litigation.

(Doc. 1 at 25). The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

**Claims 1-2**

      Under the ADA and RA, a Plaintiff must allege that he is a qualified individual with a disability, who was denied the benefits of the services, programs, or activities at the prison, by reason of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The ADA and RA also require a prison to reasonably modify its policies or practices to avoid discrimination based on disability. 28 C.F.R § 35.130(b)(7); 28 C.F.R. §41.53. Practically speaking, the two statutes are the same for purposes of initial review. *See e.g., Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). The Seventh Circuit has recognized that disability discrimination under the RA and the ADA can be "established in three different ways: '(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.'" *A.H. by Holzmueller v. Ill. High School Assoc.*,

881 F.3d 587, 592-93 (7th Cir. 2018). The proper defendant for an ADA or RA claim is the Department of Corrections or the Director. *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 670 n.2 (7th Cir. 2012) (the department or the director of the department are appropriate defendants for ADA/RA claims). An inmate seeking money damages under the ADA or RA must also establish that the entity acted with deliberate indifference to his situation. *See e.g.*, *Shaw v. Kemper,* 52 F.4th 331, 334 (7th Cir. 2022) (to recover money damages, plaintiff must identify intentional misconduct, and not mere negligence, by a named defendant); *Bernard v. Ill. Dept. of Corr.*, 2023 WL 2018915 at *7 (N.D. Ill. Feb. 15, 2023) (in the ADA and RA contexts, courts evaluate knowledge and deliberate indifference attributable to the prison entity).

    Here, Plaintiff names all defendants in association with his ADA or RA claims, but the proper defendant is the Department of Corrections. Thus, all defendants other than the Illinois Department of Corrections are dismissed from Claims 1 and 2.

    Plaintiff alleges that he has been discriminated against by the denial of an in-cell typewriter, that this is the only possible accommodation that would sufficiently address his needs, and that without this accommodation, he has been denied access to the programs, services, and activities of the prison. He alleges that because of his disability and the lack of a typewriter, he has been unable to access the grievance process, to adequately prepare legal documents, to draft written request forms for many services at the prison, to write to his family or to journal, and to express himself artistically. Though he emphasizes that he wants a typewriter, he also mentions the desire to draw in his cell, and states that the accommodation for any form of handwriting would be an ergonomic

pen. He tries to tack in that he needs an ergonomic chair, but this particular request is insufficiently detailed and is not clearly associated with his alleged disability (a permanent hand injury).

Plaintiff argues that the prison has not responded to his requests about an accommodation, he has been unable to reach the ADA coordinator, the ADA coordinator did not respond to his grievance, and prison employees have refused to help him draft grievances. He also claims that the prison has a ban on personal typewriters in the maximum security area of the prison.[2] Plaintiff alleges that the prison could secure typewriters that do not pose a security threat, but they have not even attempted to contact an eligible vendor to secure or offer these products for purchase.

At this early juncture, the Court will allow Plaintiff to proceed on Claims 1 and 2 against IDOC concerning his access to a typewriter because Plaintiff alleges that it is significantly impeding many aspects of his ability to function in the prison. However, this should not be taken as an indication that the Court is finding a typewriter to be the only necessary or appropriate accommodation. *See Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020) (finding that accommodations other than a personal in-cell typewriter were adequate to accommodate an inmate's Parkinson's disease-related handwriting impairments, and to ensure his ability to access the courts). For now, the Court's initial review merely indicates that Plaintiff may have a plausible claim about a need for an

---

[2] Plaintiff argues in the complaint that he should be reclassified to medium security given his non-violent history, so that he may be in the medium security area of Lawrence where he could possess a typewriter. However, in the Motion for a Preliminary Injunction, he now states he is housed in the medium security area.

accommodation, but not that a typewriter is or is not the solution. The Court is also not definitively determining that the resources Plaintiff currently has are inadequate. Plaintiff claims he cannot access the grievance process, he cannot adequately prepare legal work, and he is deprived of other pleasantries like journaling or writing to family, but his filing of this suit and documents in others suggests that despite impediments he is managing to produce plenty of written work. Ultimately, it may be determined that the present available resources are sufficient.

**Claim 3**

In Claim 3, Plaintiff seeks to hold the Defendants accountable for deliberate indifference to his need for accommodation. This is redundant of his desire for monetary relief on his ADA and RA claims in Claim 1, so IDOC will be dismissed from Claim 3.

As for Defendants Hughes and Godinez, Plaintiff does not explain how either individual was made personally aware of his situation but failed to act. Personal responsibility for a direct harm is a key to § 1983 liability. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Plaintiff only associates these two with the prohibition on typewriters in maximum security facilities, and he already has an enumerated claim for this at Claim 7, so Claim 3 will be dismissed as insufficiently pled against Defendants Godinez and Hughes.

Plaintiff alleges that Defendant Brown became aware of his issue when he deemed a grievance an emergency in the fall of 2024. Although he ultimately faults the prison for mishandling this grievance by denying it for lack of an incident date, the mere mishandling of a grievance is insufficient to state a claim. *See e.g.*, *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of a grievance by a person who did not otherwise cause or participate in the underlying conduct states no claim).

Finally, Plaintiff faults Defendant Bice as the ADA coordinator, but he readily admits they have never communicated directly, nor does he indicate if he knows that she ever received any correspondence from him. The mere allegation that Plaintiff attempted to contact a prison official for assistance is insufficient to establish personal involvement or responsibility for purposes of a § 1983 claim. Therefore, Claim 3 is inadequately pled as to Bice.

**Claims 4-5**

Plaintiff faults all Defendants for restricting his First Amendment rights by limiting his ability to journal and engage in art therapy, and for hindering his ability to communicate with his family in violation of the Fourteenth Amendment. The problem with these claims is that aside from the accommodations he desires, Plaintiff has not associated these issues with any of the individual defendants. A significant portion of Plaintiff's complaint is freeform narrative, without clear ties between his factual allegations and the named defendants. This is problematic because, as the Court already explained above, the key to personal liability under § 1983 is personal knowledge and involvement in an alleged harm. The general assertion that one or more defendants

engaged in constitutional violations is not adequately specific. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Plaintiff's allegations concerning his ability to journal, draw, or communicate with family do not go beyond the generic 'one or more defendants harmed me' formulation, and are insufficient as pled. Claims 4 and 5 are dismissed against all defendants.

**Claim 6**

Inmates have a constitutional right to access the courts, including the right to have "basic scribe materials," such as paper and writing utensils. *See Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002); *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir. 1995). To state a claim of denial of access to the courts, a plaintiff must allege that he was, or is, suffering an 'actual injury' by being 'frustrated' or 'impeded' in bringing a non-frivolous claim regarding his criminal conviction, sentence or conditions of confinement. *Lewis,* 518 U.S. 353-55. Moreover, the injury must be a specific hinderance related to a lawsuit, *Owens v. Evans*, 878 F.3d 559, 565 (7th Cir. 2017), and cannot be a speculative, future harm, *Marshall v. Knight*, 445 F.3d 965, 969-70 (7th Cir. 2006).

In relation to Claim 6, Plaintiff discusses six specific actions wherein he alleges he has been harmed, as well as prospective claims he has not yet been able to file. The prospective claims are not sufficient because speculative future harm is not sufficient to establish an access to courts claim, particularly where as here, Plaintiff clearly is able to file at least some materials. On the whole, Plaintiff is arguing that things in his various cases are not going the way he wants them to go because it has been difficult for him to

communicate with counsel in those matters, or because he has experienced delays or limitations in what he can prepare. In two of the cases that Plaintiff highlights, he alleges he was unable to file desired documents, but the inability to file documents did not cause Plaintiff to lose out on a meritorious claim. Plaintiff complains that in *McBroom v. Landers, et al.*, Case No. 22-cv-3073 (C.D. Ill.), he was unable to file a summary judgment response, but a review of the publicly accessible docket sheet indicates that Plaintiff did file a response, and merely missed out on a supplemental response after multiple extensions have been granted. Additionally, Plaintiff has now filed an appeal in that case. Thus, it does not appear that this juncture that his access issues deprived him of an ability to present his position or to continue to pursue it. As for the previous case before the undersigned, Plaintiff argues he could have filed an amended complaint to cure the issue, but the issue was a premature filing prior to exhaustion, which is not curable by amendment. *McBroom v. Brown, et al.*, Case No. 24-cv-2167 (S.D. Ill.). Thus, Plaintiff did not miss out on a meritorious issue in that case. All other cases Plaintiff explicitly mentioned present scenarios where he is dissatisfied, but not where he has explicitly been prevented from addressing a meritorious issue.

Regardless of if Plaintiff has plausibly alleged a specific hinderance to a meritorious claim, Claim 6 is also deficient for the same reasons as Claims 4-5. Plaintiff has not associated these allegations in the complaint with any individual defendants. Instead, the problem is attributed solely to the lack of accommodations, which are already being addressed in Claims 1 and 2. To the extent that Plaintiff believes he has some additional claims against individual defendants concerning his access to the courts, he

would need to better explain the role that individuals have played in denying his access to the courts. For now, Claim 6 is dismissed as insufficiently pled.

### Claim 7

In Claim 7, Plaintiff faults Defendants Godinez and Hughes for implementing a typewriter policy preventing maximum security inmates from possessing personal typewriters, a policy he alleges is retaliatory. A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). "To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). Then the burden shifts to the defendant to rebut plaintiff's prima facie showing by establishing that "his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Id.*

Here, Plaintiff has not identified an act of protected speech that he engaged in that allegedly led to this policy. In fact, it seems unlikely that he could identify an incident of his own speech that led to the policy given that he claims the policy was implemented in 2012, prior to his current incarceration. Even if Plaintiff established protected speech and an action likely to deter future First Amendment activity, the causal link he sets forth, is pure speculation. Plaintiff alleges, without any support, that the typewriter policy was

implemented to punish maximum security inmates who are most likely to be litigious. This is speculative and Plaintiff does not point to any evidence to support his assertion of causation. The Court does not find it plausible that this policy was implemented as a pretext to quash litigation. Because Plaintiff has not plausibly alleged the first or third elements of a retaliation claim, Claim 7 is dismissed as inadequately pled.

## Motion for a Preliminary Injunction

Plaintiff's Motion for a Preliminary Injunction discusses many aspects of complaint, and is accompanied by a supporting memorandum. (Doc. 11, Doc. 11-1). In some respects, the motion and memorandum are more detailed than Plaintiff's complaint, adding new factual allegations and new more elaborate descriptions of his theories for relief. For example, Plaintiff alleged in the complaint that he wished to be transferred from the maximum-security area of Lawrence to the medium-security area because he believes this may allow him to possess a personal typewriter. However, the motion is still quite vague in the sense that it does very little to tie the issues explained within to actions of the individual defendants. Plaintiff explains in the motion that he has now repeatedly tried to contact Defendants Brown and Bice, but this is broader than what he alleged in the complaint. A motion for injunctive relief is not an appropriate way to amend the factual allegations of the complaint, so to the extent Plaintiff may be attempting to broaden or alter his allegations in the complaint via this motion, he cannot do so.

Preliminary injunctive relief is meant to preserve the status quo until litigation can further resolve the merits of a claim. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (a

preliminary injunction is meant to preserve the status quo, and if it seeks a mandatory act, it shall sparingly be issued).  If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm ...," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).  Typically, preliminary injunctive relief may only issue if it is related directly to a pending claim and defendant, whereas relief beyond the bounds of the claims and parties is inappropriate.  *See e.g.*, *Tatum v. Hunter*, Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in* *Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

      For reasons explained in the Analysis section of this Order, many of Plaintiff's operative claims have been dismissed as insufficiently pled, and all claims against individual defendants have been dismissed.  This significantly narrows the scope of injunctive relief that could potentially be considered as related to a pending claim and defendant.  Essentially, given that only Claims 1 and 2 survive against IDOC, Plaintiff is currently only potentially eligible for injunctive relief related to his ADA and RA claims. Plaintiff alleges in the motion that despite being moved to the medium-security area, he is still without accommodations that he needs, and this is limiting his access to programs and services the prison offers.  He alleges he has repeatedly tried to broach this topic with local prison officials, but he has not been gaining any meaningful traction.  Although the Court finds that the likelihood of success on these claims is perhaps speculative at this

point given the doubts discussed in the analysis of Claims 1 and 2, it will at least direct the prison to respond to Plaintiff's Motion solely on the issue of access to a typewriter or other suitable accommodations that would allow him to accomplish basic tasks at the prison. Although the Court dismissed all claims against Defendant Brown, the Court will keep Brown as a party to the case because he may be the most appropriate party to implement any injunctive relief if any is afforded.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1 and 2** survive solely against the Illinois Department of Corrections. By contrast, **Claims 3-7** are dismissed without prejudice as insufficiently pled. The Clerk of Court shall **TERMINATE** Defendants Godinez, Hughes, and Bice.

The Clerk of Court is **DIRECTED** to prepare for Defendants Illinois Department of Corrections and Jeremiah Brown (Warden in official capacity only solely for purpose of implementing injunctive relief if any is ordered): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will likely involve the exchange of medical records.

A ruling on Plaintiff's Motion for a Preliminary Injunction (Doc. 11) is **DEFERRED**, and the <u>Defendants are **DIRECTED** to respond to the motion as limited by this Order within 21 days of returning executed waivers of service</u>.

Plaintiff's Motion to Expedite and for Service (Doc. 12) is **GRANTED** by the issuance of this Order in so much as this order accomplishes the screening of his case and sets next steps to evaluate the request for preliminary injunctive relief.

**IT IS SO ORDERED.**

**DATED:** September 25, 2025                     /s *David W. Dugan*
  
                                                              DAVID W. DUGAN
                                                              United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.